# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA J. BLANCETT,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:20-cv-00253-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.     INTRODUCTION

On February 16, 2020, Plaintiff Donna J. Blancett ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.     BACKGROUND

### A.     Procedural History

On August 24, 2016, Plaintiff protectively filed a claim for DIB payments, alleging she

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 11.)

became disabled on October 1, 2014, due to fibromyalgia, Hashimoto's thyroiditis, obesity, irritable bowel syndrome, arthritis, back and knee pain, pulmonary obstruction, brain lesion, double vision, anxiety, depression, lack of concentration, and lack of comprehension. (Administrative Record ("AR") 24–25, 68, 69, 84, 85, 193, 236, 245.) Plaintiff was born on September 23, 1957, and was 57 years old on the alleged disability onset date. (AR 68, 84, 156, 236, 245.) Plaintiff has an associate's degree and worked as an eligibility worker with Stanislaus County from January 1989 to October 2014. (AR 31, 41, 60, 204.)

The Commissioner denied Plaintiff's application for benefits initially on March 1, 2017, and again on reconsideration on May 30, 2017. (AR 101–106, 108–13.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 114–130.) On July 11, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 39–59.) A vocational expert ("VE") also testified at the hearing. (AR 59–66.) Plaintiff testified that she has constant pain due to fibromyalgia and arthritis in her knees, back, shoulders, and hands. (AR 44.) She reported that she can walk about 30 minutes on a treadmill but only 20 minutes outside. (AR 46.) Plaintiff uses assistive devices to avoid falling and can lift 10 to 20 pounds. (AR 46–47, 50.) She reported that she tends to drop things due to her arthritis. (AR 50–51.) Plaintiff also testified that she suffers from depression and frustration, which cause "crying fits" that can last all day, causing her to cancel plans. (AR 52–53.)

On December 12, 2018, the ALJ issued a decision finding Plaintiff not disabled, as defined by the Act. (AR 22–31.) Plaintiff sought review of the ALJ's decision before the Appeals Council. Along with her request for review, Plaintiff submitted post-decision evidence to the Appeals Council consisting of two medical source opinions dated April 9, 2019, by Jack Collins, M.D. (AR 2, 12–16.)

On June 5, 2018, the Appeals Council denied the request for review (AR 1–6), rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981. The "Notice of Appeals Council Action" denying review sets forth the Appeals Council's finding that Dr. Collins' opinions do "not show a reasonable probability that it would change the outcome of the

decision" and indicates that the Council "did not consider and exhibit this evidence." (AR 2.)

**B.     The ALJ's Decision**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 24–31.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of October 1, 2014, (step one). (AR 24.) The ALJ found that Plaintiff had the following severe impairments: obesity, fibromyalgia, Hashimoto's thyroiditis, generalized osteoarthritis, osteoarthritis at the first carpometacarpal joint of the left hand, osteoarthritis of the knees and shoulders, varicose veins at the bilateral lower extremities, atherosclerosis of the native arteries of the lower extremities, and spondylosis of the lumbar spine with facet arthropathy (step two). (AR 24–27.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 27.) The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[2] and applied the RFC assessment at step four. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

The ALJ determined that Plaintiff retained the RFC:

> to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except she must alternate positions as needed but will remain on task at the workstation. She must use a cane as needed for ambulation and balance. She is never able to climb ladders, ropes, or scaffolds. [Plaintiff] is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. She is limited to frequent bilateral fingering. She must avoid all exposure to unprotected heights, dangerous machinery, and other hazards.

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

3

(AR 28.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 29.)

On the basis of this RFC assessment, the ALJ found that Plaintiff was able to perform her past relevant work as an eligibility worker (step four). (AR 31.) In making this determination, the ALJ posed a series of hypothetical questions to the VE based upon Plaintiff's RFC. (AR 60–63.) In response, the VE testified that a person with the specified RFC could perform Plaintiff's past work. (AR 60–63.) When posed with a hypothetical that included an additional limitation to Plaintiff's RFC of being "regularly off task at least 20% of the day" and "regularly absent at least two days per month," the VE testified that there was no work such a person could perform. (AR 63–64.)

### III. LEGAL STANDARD

**A. Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If

so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its

judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins*, 466 F.3d at 885). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

**A. The ALJ's Decision is Not Supported by Substantial Evidence**

### 1. Dr. Collins' Post-Decision Opinions Are Part of the Record

Plaintiff challenges the ALJ's decision on the basis, *inter alia*, that it fails to consider Plaintiff's mental and physical impairments in formulating the RFC, particularly in view of Dr. Collins' opinions, which were submitted for the first time to the Appeals Council. (*See* Docs. 19 at 27–28; Doc. 25 at 5–6.) Where the Appeals Council considers additional evidence in denying review of the ALJ's decision, that evidence is deemed to be part of the administrative record that a court must evaluate when reviewing the Commissioner's final decision for substantial evidence.

*Brewes v. Comm'r of Soc. Sec. Admin*, 682 F.3d 1157, 1163 (9th Cir. 2012).

As set forth above, when Plaintiff requested Appeals Council review of the ALJ's decision, she submitted additional evidence: two medical source opinions of Dr. Collins dated April 9, 2019. (AR 2, 12–16.) The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence." (AR 2.) The Court observes that the Appeals Council's statement is ambiguous, *i.e.*, it is not clear how the Appeals Council determined that the new evidence would not impact the outcome while simultaneously not considering it. *See, e.g., Deliny S. v. Berryhill,* No. CV 17-06328-DFM, 2019 WL 1259410, at *1 (C.D. Cal. Mar. 19, 2019) (describing Appeals Council's statement as "ambiguous" but assuming it considered the new evidence); *Mayeda-Williams v. Comm'r of Soc. Sec. Admin.*, No. 18-0009-HRH, 2019 WL 157918, at *5 (D. Ak. Jan. 10, 2019) (same).

Like *Deliny S*. and *Mayeda-Williams*, the Court finds that the most plausible interpretation of the Appeals Council's explanation is that the Council did in fact *consider* Dr. Collins' opinions, but determined that they would not change the outcome of Plaintiff's case.[3] *See id. See also, e.g., Patrick K. G. v. Saul*, Case No. SA CV 18-01156-RAO, 2019 WL 2613456, at *9 (C.D. Cal. June 26, 2019) ("Although the Appeals Council stated that it 'did not consider' Plaintiff's new evidence, it appears that the Appeals Council necessarily did consider the evidence in order to determine that it 'does not show a reasonable probability that it would change the outcome of the decision.'"); *Truong v. Berryhill*, No. 17-cv-02179-BEN (RNB), 2018 WL 6198279, at *3 (S.D. Cal. Nov. 28, 2018) (Appeals Council's statement is a "*non sequitur*," as the Council "had to consider the additional evidence to find that it did 'not show a reasonable probability that it would change the outcome of the decision.'"); *Linnehan v. Berryhill*, No. 17-CV-04146-JSC, 2018 WL 6267846, at *8 (N.D. Cal. July 31, 2018) (Appeals Council "cannot consider the evidence to conclude that it 'does not show a reasonable probability that it would

---

[3] Moreover, in considering Dr. Collins' opinions, the Appeals Council must also have found good cause under 20 C.F.R. § 404.970(b) for their submission. *See id.* (Appeals Council will only consider additional evidence that is submitted for the first time to the Council if a claimant shows good cause for not timely submitting the evidence to the ALJ).

7

change the outcome of the decision' and then exclude the evidence from the record based on the illogical conclusion that '[w]e did not consider and exhibit this evidence.'"). The Court therefore considers Dr. Collins' opinions to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence.[4]  *Brewes*, 682 F.3d at 1163. *See also Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1231 (9th Cir. 2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error").

### 2. The Rejection of Dr. Collins' Opinions Was Erroneous

Plaintiff alleges, and the record reflects, that Dr. Collins was Plaintiff's treating physician beginning in October 2014. (AR 416–448, 479–483, 566–569.) On April 9, 2019, Dr. Collins completed two medical source opinions: one titled "Questionnaire: Physical with Emphasis on Hand Impairments" (the "Physical Statement") and the other, titled "Medical Source Statement, Psychiatric" (the "Psychiatric Statement"). (AR 12–16.) In the Physical Statement, Dr. Collins opined that Plaintiff's impairments precluded her from performing full-time work at any exertional level, including the sedentary level. (AR 16.) He noted Plaintiff's primary impairments were fibromyalgia, osteoarthritis, depression, and fatigue caused by fibromyalgia and depression. (AR 16.) The objective findings supporting Dr. Collins' opinion included x-rays of Plaintiff's lumbar spine, right knee and hands. (AR 16.) He opined Plaintiff could sit for 15 to 20 minutes at a time, stand for five minutes, and walk for 10 to 15 minutes. (AR 16.) Dr. Collins found that Plaintiff must lie down two to three times a day for 30 to 60 minutes due to fatigue and pain, and the osteoarthritis in Plaintiff's hands makes typing, writing, and doing paperwork difficult. (AR 16.) He noted that Plaintiff had anxiety and depression that caused difficulty dealing with work situations. (AR 16.) Dr. Collins opined Plaintiff could lift five pounds frequently and 10 pounds occasionally; reach/grasp, handle, and feel, each for 5–10 minutes at a time; could not push or pull; and could perform fine finger manipulation for five minutes at a time. (AR 16.)

---

[4] The Court is <u>not</u> reviewing whether the Appeals Council improperly denied Plaintiff's request for review. Rather, the Court reviews the opinions in the new evidence that was presented to the Appeals Council in its overall review of the ALJ's final decision. *See Taylor*, 659 F.3d 3d at 1232.

Dr. Collins' Psychiatric Statement reported his finding that Plaintiff has marked impairment (defined as "considerable impact throughout the workday") in the following areas: the ability to maintain concentration and attention (for simple and/or complex tasking); the ability to understand, remember, and carry out simple one-or-two job instructions; the ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions; and the ability to receive and carry out instructions from supervisors. (AR 13.) Dr. Collins opined that Plaintiff has extreme impairment (defined as "almost constant impact on work or total limitation") in the ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity; in the ability to deal with the public; and the ability to relate and interact with co-workers. (AR 13.) He found that Plaintiff would likely miss four to 10 days of work per month. (AR 13.)

Unfortunately, the Appeals Council provided no reasoning whatsoever in support of its conclusion that Dr. Collins' opinions do "not show a reasonable probability that it would change the outcome of the decision." The absence of reasoning is particularly problematic because Dr. Collins is Plaintiff's long-time treating physician, who opines that her limitations would render her unable to work. These opinions should presumptively have been afforded great weight. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("a treating physician's opinion is generally afforded the greatest weight in disability cases"); 20 C.F.R. § 404.1527(c)(2)(i) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").
To reject such an opinion, an ALJ must, at the very least, have provided a "specific and legitimate" reason supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, the ALJ provided no reasons for rejecting Dr. Collins' opinions (an understandable omission, given that the opinions were not before her) and the Appeals Council took no steps to fill this explanatory void. The record does not contain any reasoned explanation for rejecting Dr.

Collins' opinions, let alone specific and legitimate reasons supported by substantial evidence.[5] That constitutes error. *See McLaughlin v. Saul,* No. 1:18-CV-00967-SKO, 2019 WL 3202806, at *6 (E.D. Cal. July 16, 2019); *Reyes v. Comm'r of Soc. Sec. Admin.*, No. CV-17-08192-PCT-SMB, 2019 WL 2098755, at *4 (D. Ariz. May 14, 2019); *Williams v. Berryhill*, Case No. C17-5885 JCC-BAT, 2018 WL 6737511, at *5 (W.D. Wash. Apr. 19, 2018).

### 3. The Error is Not Harmless

Harmless error review applies when a treating source's medical opinion is not considered in an ALJ's decision. *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, the ALJ concluded at step two that Plaintiff's anxiety and depression were not severe. (AR 25–26.) In so doing, she assigned only "partial weight" to the opinion of consultative examiner Phillip M. Cushman, Ph.D., that Plaintiff had more than mild limitations in her mental work-related abilities, finding the opinion "not supported by the medical record." (AR 25.) Yet Dr. Cushman's opinion, which noted that Plaintiff would have "great difficulties" with regular attendance and consistent participation (AR 472), is consistent with Dr. Collins' Psychiatric Statement indicating Plaintiff's marked impairment in her ability to maintain concentration and attention, and the likelihood that Plaintiff would be absent from work four to 10 days a month (AR 13). Dr. Collins' Psychiatric Statement casts doubt upon the ALJ's reasoning for discounting Dr. Cushman's opinion and her finding regarding the severity (or lack thereof) of Plaintiff's mental impairments at step two. The Court therefore cannot "confidently conclude" that "no reasonable ALJ" could have reached a different disability determination. *See Marsh*, 792 F.3d at 1173 (ALJ's failure to consider treating doctor's medical opinion, which described the plaintiff as "pretty much nonfunctional," was not

---

[5] The Commissioner belatedly attempts to supply such reasons in its response brief, identifying various reasons why the ALJ and/or Appeals Council could have deemed the late-submitted evidence unpersuasive. (*See* Doc. 24 at 13.) But those explanations are not properly before the Court. As the Ninth Circuit has emphasized, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

harmless). Moreover, because the ALJ did not include or discuss any functional limitations related to Plaintiff's mental impairments in determining the RFC, the error was not harmless.[6] *Cf. Inskeep v. Colvin*, No. 3:15-cv-00759-BR, 2016 WL 3509395, at *4 (D. Or. June 27, 2016) (concluding that the ALJ erred at step two when he found Plaintiff's mental impairments are nonsevere and finding that error is not harmless because the ALJ did not include any mental limitations in his assessment of Plaintiff's RFC.) (citing *Lewis*, 498 F.3d at 910).

The same goes for Dr. Collins' Physical Statement. The ALJ declined to wholly adopt the opinions of the non-examining State agency physicians and ultimately concluded that Plaintiff had the RFC to perform a reduced range of sedentary work because the record did "not support more than moderate objective findings and she appears to be functioning fairly well with appropriate accommodations and assistive devices." (AR 29.) The Physical Statement appears to belie this conclusion. Dr. Collins based his opinion on x-ray results demonstrating the existence of osteoarthritis in Plaintiff's hands (as well as in her lumbar spine and right knee), causing more than a moderate limitation in her manipulative abilities. (AR 16.) Dr. Collins' Physical Statement also suggests that Plaintiff is not functioning as well as the ALJ describes, opining that Plaintiff must lie down two to three times per day for 30 to 60 minutes due to fatigue and pain. (AR 16.) Given the extra weight entitled to treating physicians, the Court cannot conclude "no reasonable ALJ" could have reached a different conclusion with respect to Plaintiff's RFC.[7] Accordingly, the error was not harmless.

**B.     Remand for Further Proceedings is Appropriate**

It is for the ALJ to determine whether a plaintiff has severe impairments and, ultimately, whether she is disabled under the Act. *See Marsh*, 792 F.3d at 1173 ("[T]he decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court"). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587,

---

[6] The VE testified in fact that the addition to Plaintiff's RFC of a limitation of being off task at least 20% of the workday and being absent two days per month would preclude all work. (AR 63–64.)

[7] This is particularly true where, as Plaintiff points out, she might otherwise be subject to section 201.02 of the Medical-Vocational Guidelines, 20 CFR, Part 404, Subpart P, Appendix 2. (*See* Doc. 19 at 26.)

593 (9th Cir. 2004). The ALJ, not the Court, is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Here, the ALJ did not have the opportunity to consider, in the first instance, Dr. Collins' Psychiatric Statement and his Physical Statement. Having found these opinions properly part of the record, the ALJ must evaluate them to determine its impact on the severity of Plaintiff's impairments, her RFC, and the ultimate question of Plaintiff's disability. Remand for further proceedings—and not, as Plaintiff asserts, remand for benefits (*see* Doc. 19 at 30)—is therefore the appropriate remedy. *See Vasquez v. Astrue,* 572 F.3d 586, 597 (9th Cir. 2009) (remanding to allow ALJ to assess results of psychological testing, considered by the Appeals Council, and how claimant's limitations affect her RFC); *McLaughlin*, 2019 WL 3202806, at *6; *Billie-Jo M. v. Saul*, No. 6:19-CV-00092-SB, 2020 WL 2521754, at *10 (D. Or. May 18, 2020) ("Plaintiff submitted new, post-decision medical evidence that the ALJ has not had an opportunity to evaluate. Under these circumstances, a remand to the agency for further proceedings to fully develop the record is the appropriate remedy.") (internal quotation marks omitted).

**C. The Court Declines to Determine Plaintiff's Remaining Assertions of Error**

As the Court finds that remand is appropriate for the ALJ to consider Plaintiff's post-decision evidence, the Court does not reach Plaintiff's additional assertions of error regarding the ALJ's treatment of Dr. Cushman's opinion at step two and Plaintiff's credibility, both of which will need be reevaluated in light of the additional evidence.[8] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not

---

[8] The Court does, however, determine that these alleged errors do not warrant reversal with the directive for payment of benefits at this time.

address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### V. CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Donna J. Blancett and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **May 3, 2021**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE